```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION


JEFF SIMPSON,                          )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )
                                       )   No. 08 C 577
VILLAGE OF RIVERSIDE, BOARD OF         )
POLICE AND FIRE COMMISSION OF THE      )
VILLAGE OF RIVERSIDE, EUGENE           )
KARCZEWSKI, WILLIAM L. SMITH,          )
BERNARD ROCCANOVA, JR., and ROBERT     )
J. PETERS, in their individual         )
capacities,

        Defendants.
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeff Simpson ("Simpson"), a Village of Riverside Police Officer, sued the Village of Riverside ("the Village"), the Village's Board of Police and Fire Commissioners ("the Board"), the Board's members, and the Village's former Police Chief Eugene Karczewski ("Karczewski"), alleging that the defendants violated 42 U.S.C. § 1983 by retaliating against him for exercising his First Amendment rights.  Simpson claims that, despite his superior performance on the 2006 sergeant's examination, he was not promoted because he had voiced concern about a potential conflict of interest between Karczewski's role as Police Chief and his side business selling insurance and other financial products on behalf of Primerica, Inc.  The defendants have moved for summary judgment on each of Simpson's three claims.  For the reasons discussed

below, the motion is granted.

I.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts must be construed in the light most favorable to the non-movant, and all justifiable inferences must be drawn in the non-movant's favor. *Id.* at 255.

In the first two counts of his complaint, Simpson asserts a free speech retaliation claim under § 1983 against the individual defendants (Count II) and a *Monell* claim against the Village and the Board (Count I). "To make out a prima facie case of first amendment retaliation, a public employee must present evidence that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action." *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). If Simpson makes this threshold showing, the burden shifts to the defendants to produce evidence that they would not have promoted Simpson regardless of his protected speech. *Id.* If the defendants succeed in carrying this burden, Simpson must point to evidence indicating

that the defendants' explanation is pretextual and that retaliatory animus was the real reason they did not promote him. *Id.*

The defendants' first argument is effectively a show-stopper: they point out that Simpson has failed to cite any evidence suggesting that they were even aware of his views regarding Karczewski's employment with Primerica. Simpson concedes "that he has no knowledge about whether Chief Karczewski ever knew that Simpson had conversations regarding the Chief selling insurance and financial products." Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 43. Further, Simpson admits that prior to the filing of his suit, "the members of the Board of Fire and Police Commission did not know that Simpson had spoken to others in the Department or to anyone else about the Chiefs [sic] outside business or conducting business with members of the Department." Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 48; *see also* Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 44.

Despite these concessions, Simpson cites three facts from which he believes a jury could infer that Karczewski was aware of Simpson's opinions regarding his Primerica business:[1] (1) that

---

[1] Simpson contends that he is not required to show that the Board acted with a retaliatory animus. Rather, he appears to maintain that he is required only to show that Karczewski acted with a retaliatory animus and that, despite the Board's authority over promotions, Karczewski succeeded in dictating the Board's ultimate decision not to promote Simpson. In particular, Simpson claims that the Village's decision-making process allows the Police Chief to influence the outcome by allocating so-called "Chief Points" to candidates' scores. However, Simpson provides no evidence that Karczewski influenced the Board's decision in any such way. Indeed, during his deposition, he was forced to admit

Karczewski "became aware of allegations that he was engaged in inappropriate business dealings and launched an investigation" into the matter; (2) that "in a small close knit department, Simpson spoke to every member of the Police Department about Karczewski's activities"; and (3) that "Simpson had a conversation with Mr. DiNatale, the Village president," in which "DiNatale told Mr. Simpson that the Chief's Primerica business had been discussed while he [DiNatale] was still acting President, and that he had discouraged the Chief from pursuing this business." Resp. Br. at 6.

Even when viewed in the light most favorable to Simpson, these facts simply do not provide a basis for inferring that any of the defendants was aware of any statements or views that Simpson might have expressed concerning Karczewski's Primerica business. It is undisputed that Simpson was not the only officer who discussed Karczewski's potential conflict of interest. On the contrary, Simpson acknowledges that all of the officers discussed the matter amongst themselves. Notably, it was because of an anonymous letter written by one of Simpson's fellow officers that Karczewski became aware that concern had been expressed about his Primerica business. There is no evidence indicating that Karczewski was aware that

---

that he does not "have any knowledge whatsoever that there are any points added or deleted from the Board's score on the oral examination based upon . . . Chief's points." Simpson Dep. at 172:20-23.

Simpson had voiced an opinion on the issue. Nor is the department's closely-knit character enough to transform Simpson's speculation into a reasonable inference. *See, e.g.*, *Healy v. City of Chicago*, 450 F.3d 732, 740 (7th Cir. 2006) (claim failed because even if defendant was generally was aware of corruption problems, there is no proof that she knew specifically that plaintiff, as opposed to another individual, had complained to his supervisors about the problem); *Sarlo v. Wojcik*, No. 08 C 2194, 2010 WL 3824161, at *8 (N.D. Ill. Sept. 23, 2010).

Simpson's conversation with DiNatale similarly fails to support his position. Once again, there is no evidence that Karczewski was aware of the conversation; and even if Karczewski had been aware of it, Simpson does not explain why the remark in question -- which is relatively innocuous and was made by DiNatale, not Simpson -- should have given rise to a retaliatory animus against Simpson.

Yet even if Simpson were able to make out a prima facie case of retaliation, his retaliation claim still would not survive summary judgment, because Simpson has offered no evidence that the defendants' reason for not promoting him was pretextual. The defendants explain that they did not promote Simpson because, of the ten candidates who sat for the 2006 sergeant's examination, several scored higher than Simpson. William Gutschick ranked first with a score of 88; David Krull ranked second with a score of 87;

Frank Pontrelli was third with a score of 86. Simpson placed fourth with a score of 81. The top three officers were promoted in rank order as sergeant positions became available within the department. The Board promoted Gutschick to sergeant on July 23, 2006; Krull to sergeant on August 11, 2007; and Pontrelli to sergeant sometime after Karczewski retired in January 2008.

Simpson insists that he achieved the highest score on certain portions of the examination. The test was comprised of three components: (1) a written exam conducted on May 15, 2006; (1) a practical assessment conducted on May 16-17, 2006; and (3) and an oral interview conducted by the Board on June 27 and 28, 2006. Simpson points out that he placed second on the written portion of the examination, just behind fellow officer Brett Erickson, and that when Erickson resigned, Simpson took over the top spot. But Simpson cites no evidence to show when Erickson resigned, or indeed whether Erickson resigned at all. Defs.' Resp. to Add'l Facts ¶ 37. Moreover, the written section of the test accounted for only twenty-five percent of each candidate's overall score; the oral interview was worth forty percent of the score, and the practical assessment was worth thirty-five percent. Thus, even if Simpson had performed spectacularly on the written section, that would not guarantee him a high placement in the overall rankings.

Simpson also claims that he had the highest composite score on the test's written and practical sections. However, the record

indicates only that his score on the written component was 81 (the second highest score) and that his score on the practical assessment was 79.33 (the fifth highest score). The documents that Simpson cites to support his claim that he had the highest composite score -- Exhibits I and J -- were never produced during discovery. Defs.' Reply Br. at 12-13. It is not clear how or by whom the documents were created. The defendants maintain that the exhibits are outright fabrications. Simpson has not responded to this charge.

Even more oddly, the exhibits do not support Simpson's position. Exhibit I lists the average of each candidate's practical and written scores. However, the calculations were performed without taking account of the relative weight assigned to the two sections. As for Exhibit J, the document reflects only Simpson's and Pontrelli's scores. Notably, the document lists Simpson's and Pontrelli's individual scores on the oral portion of the exam, despite the fact that these were never announced by the Board. The chart in the document does appear to indicate that Simpson had a higher composite score than Pontrelli on the first two sections; but it also shows that Simpson scored *lower* than Pontrelli when all three weighted scores were added together. Simpson once again fails to take account of the fact that the written and practical sections comprised only two of the exam's three sections, and that each section was assigned less weight than

the oral section.  Regardless of whether Simpson had the highest composite score on the first two sections, he still needed to perform well on the exam's oral portion.

As noted, the candidates' scores on the oral exam were never individually announced.  Instead, the Board simply listed the candidates' overall scores with their respective scores on the oral section already factored in.  Nevertheless, the record makes clear that, while Simpson's performance was not abysmal, the oral interview substantially reduced his overall score.[2]  In explaining his reasons for ranking other officers higher than Simpson, Board Member Bernard Roccanova pointed out that, while he regarded Simpson as a strong candidate, Simpson's attendance record was "horrendous" compared with that of the other candidates.  (Simpson missed thirty-four days of work in 2005 due to back surgery.  *See* Defs.' Resp. Pl.'s 56.1 Stmt. 22).  Similarly, Board Member Robert Peters stated that since it is important for sergeants to have the respect of subordinate officers, he took particular account of the way each of the candidates assessed the other candidates' fitness for the position of sergeant.  Each of the ten candidates stated that William Gutschick had the makings of a good sergeant; nine stated that Pontrelli did; eight said that Krull did; however, only

---

[2] By extrapolation from his scores on the first two sections (81 and 79.33) and his overall score (81), his score on the oral portion was approximately 82.

six of ten officers stated that Simpson had the makings of a good sergeant.

Simpson claims that the test was rigged by assigning the most weight to the oral portion of the exam and then deliberately giving him a poor score on that section. In support of this argument, he points out that the Board increased the weight of the oral exam from thirty percent to forty percent in 2006. He also points out that the change to the weighting system was made after the written and practical portions of the 2006 exam had been administered and scored, and that, unlike the written and practical sections of the test, the oral portion was not administered and scored by an independent third party.

This argument quickly unravels in light of the fact that the Board's changes to the weighting system were made before any of the defendants were aware of the candidates' scores. The results of the first two sections were mailed by the testing corporation to Karczewski on May 23, 2006 (who then shared the scores with the Board and candidates), but the change in weighting was made at the Board's regularly-scheduled meeting on May 17, 2006. Hence, the defendants had no reason to believe that the changes to the weighting scheme would have worked to Simpson's disadvantage.

Simpson's only other argument is that "if the board considers so many factors, wouldn't they also consider the fact that the Plaintiff experienced absences in 2005 because of an on the job

injury? Wouldn't they also consider the Plaintiff's high standing on the arrest statistics within the department, his Officer of the Year award, and military service?" Pl.'s Resp. Br. at 11. There is no reason to think that the Board ignored these factors, nor any reason to think that if the Board had failed to consider these factors, the outcome of the process should have been different.[3]

For these reasons, the defendants are entitled to summary judgment on Simpson's retaliation claim against the individual defendants. Moreover, since Simpson's underlying retaliation claim fails, his *Monell* claim against the Board and the Village necessarily fails as well. *See, e.g.*, *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008).

This leaves Count III of the complaint, in which Simpson alleges that the defendants violated his right to freedom of association. Even at this stage of the litigation, Simpson has failed to articulate precisely what this claim is and the ground

---

[3] Simpson also argues that he was passed over for promotion after the 2003 sergeant's examination. This argument fails because it falls outside of two-year limitations period for ¶ 1983 claims. Simpson argues that "[a]t this point, it is not obvious whether [these earlier] events can be considered separate and discrete, or rather continuous in nature." Resp. at 13. However, Simpson fails sufficiently to develop this argument. In any case, he placed second on the 2003 list. During the three years for which the list remained in effect, there was only a single opening for sergeant, and the promotion went to Frank Lara, the officer who scored higher than Simpson. Simpson argues that Commander Mark Tuma resigned on July 17, 2006, so that a spot was open and he was now first on the list. By this time, however, the 2006 examination was already underway.

upon which it rests.  When specifically questioned about the claim during his deposition, Simpson vaguely alluded to the fact that officers who were promoted in the department were discouraged from associating with patrolmen.  *See* Simpson Dep. at 191:6-195:18.  He also stated that individuals who purchased financial products from Karczewski did not "hang out" with those who did not.  *See* Simpson Dep. at 189:15-190:4.

In moving for summary judgment, the defendants addressed the latter allegations.  Simpson has responded by arguing that the "[d]efendants did not present a developed argument dealing with the chilling effect the Plaintiff has endured in regards to his position as Union President, and the speech that he engaged in pursuant to that role."  Resp. at 14.  As an attempt at elucidation, this statement is not much of an improvement.  Simpson does not explain how these allegations are connected with the freedom of association.  Nor does Simpson point to any previous statements that might have put the defendants on notice that his freedom of association claim had anything to do with the chilling effect on his speech as Union President. A party cannot avert summary judgment by playing hide the ball in this fashion.  *See, e.g.*, *Lemmermann v. Blue Cross Blue Shield of Wis.*, No. 08-cv-218-bbc, 2010 WL 2016848, at *16 (E.D. Wis. Apr. 23, 2010) ("[W]hen a claim is not 'clearly articulated' in a complaint, the plaintiff cannot advance such a claim to survive summary judgment,

as a plaintiff's pleadings must 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'") (quoting *Glover v. Haferman*, 252 Fed. App'x. 757, 761 (7th Cir. 2007) (emphasis deleted); *see also Kroger v. Legalbill.com*, 436 F. Supp. 2d 97, 107-08 (D.D.C. 2006); *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1138 (N.D. Ga. 1997). As with Counts I and II, therefore, the defendants are entitled to summary judgment on Count III of Simpson's complaint.

II.

For these reasons, defendants' motion for summary judgment is granted.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: October 20, 2010